UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LAURA ANDERSON                                    CIVIL ACTION

VERSUS                                            No. 05-801

NEW ORLEANS JAZZ & HERITAGE                       SECTION "R" (1)
FESTIVAL AND FOUNDATION, INC.
and XYZ INSURANCE COMPANY

**ORDER AND REASONS**

Before the Court is a motion for summary judgment by defendant New Orleans Jazz & Heritage Festival and Foundation, Inc.  For the following reasons, the Court GRANTS the motion.


**I.    BACKGROUND**

Plaintiff Laura Anderson worked for defendant New Orleans Jazz & Heritage Festival and Foundation, Inc. (the "Foundation") as an assistant associate producer of the Jazz and Heritage Festival during the years 2001-2004.  Her job was to serve as a conduit between the associate producer and the departments that the associate producer supervised, such as food, security, operations and parking.

On August 8, 2003, Anderson had a hysterectomy.  Although she had not fully recovered from the operation, she voluntarily returned to work on September 8, 2003.  Anderson experienced further medical problems, including fatigue and depression, for which she sought medical treatment.  (R. Doc. 30-5 at Ex. 4, pp. 83-84).

In December 2003, Anderson became seriously ill.  She was treated at that time at Touro Infirmary in New Orleans for headache, nausea, vomiting, intermittent slurred speech, and unsteady gait.  *Id.* at Ex. 20.  Following her treatment, Anderson returned to work for the Foundation.  She alleges that she continued to be ill and suffered fatigue, cognitive problems, emotional instability and stress-related anxiety, which prevented her from adequately performing her assigned duties during January and February 2004.  Records from one of her treating physicians indicate that Anderson was suffering from anxiety and depression and that she was addicted to painkillers.  *Id.* at Ex. 22.

On January 15, 2004, Anderson met with her supervisor to discuss her performance for the previous festival year, 2002-03.  They also discussed problems in Anderson's job performance for the current year, including her inability to focus, inability to complete certain jobs, and negative attitude toward her supervisor.

2

On January 20, 2004, Anderson met with her supervisor and
several officers and directors of the Foundation to discuss her
poor work performance and health issues.  At that meeting,
Anderson mentioned that she wanted to file for intermittent leave
under the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.*
("FMLA").  On January 23, 2004, Anderson met with the Festival's
human resources manager and read from a statement in which she
requested FMLA leave "if there are days I can not function
properly and time I need . . . for doctor appointments."  (R.
Doc. 30-5 at Ex. 18).  On January 30, 2004, Anderson received a
memorandum from Foundation officials detailing the Foundation's
FMLA policy.  (R. Doc. 30-6 at Ex. 27).  Under the policy,
Anderson was required to complete a "Request for Family and
Medical Leave of Absence" form, submit a certification of her
serious medical condition, seek approval for all future leave
from her supervisor, and make a good faith effort to schedule
appointments so as not to disrupt her work.  *Id.*

During this period, Anderson's job performance continued to
suffer.  (R. Doc. 30-5 at Ex. 2, ¶¶ 13-15).  In particular, on
January 27, 2004, Anderson arrived at work late, did not remind
the staff of an upcoming meeting, and failed to create an agenda
for that meeting.  *Id.* at Ex. 2, ¶ 16.  She failed to meet a
January 30, 2004 deadline for completing a master production

3

schedule.  *Id.* at Ex. 2, ¶ 20.  Also on January 30, 2004, Anderson received a memorandum from Nancy Ochsenschlager, which summarized the deficiencies in Anderson's work performance that they discussed on January 15, 2004.  *Id.* at Ex. 24. Ochsenschlager also listed some of the requirements of Anderson's position.  *Id.*  Finally, Ochsenschlager informed Anderson that, should her performance not improve, the Foundation would have to consider terminating her.  *Id.*

On February 4, 2004, Anderson filed a form requesting FMLA leave from the Foundation.  *Id.* at Ex. 28.  The form included a medical certification form completed by Anderson's treating physician, Dr. Jonathan Butler.  *Id.*  Dr. Butler stated that Anderson suffered from a serious health condition as defined by the FMLA, that she was not able to perform essential functions of her position, and that intermittent leave or a reduced work schedule was medically necessary for Anderson.  *Id.*

The Foundation submitted that Anderson was absent from work without requesting leave or notifying her supervisor that she would be taking leave on February 6, 2004.  *Id.* at Ex. 2, ¶ 21. On February 11, 2004, Anderson admitted to having failed to revise job descriptions that were due on February 6.  *Id.* at Ex. 2, ¶ 22.  On February 13, 2004, Anderson admitted to her supervisor, Nancy Ochsenschlager, that she was having trouble

4

getting her work done.  *Id.* at Ex. 2, ¶ 23.  The agenda that
Anderson prepared for a March 2, 2004 meeting included errors.
*Id.* at Ex. 2, ¶ 29.

On March 4, 2004, Anderson submitted a second FMLA
application to the Foundation, again accompanied by a
certification from Dr. Butler.  *Id.* at Ex. 29.  In his second
certification, Dr. Butler reiterated the conclusions from his
first certification and added that Anderson needed to be absent
from work for medical treatment, including weekly physical
therapy and chiropractic appointments.  *Id.*  Dr. Butler further
noted "minimal improvement" in Anderson's condition.  *Id.*

The Foundation maintains that although Anderson continued to
take intermittent leave, she did not perform her job
satisfactorily when she was not on leave.  According to the
Foundation, matters came to a head on March 10, 2004.  *Id.* at Ex.
2, ¶¶ 31-33.  Anderson failed to prepare for a meeting of about
120 people.  *Id.*  During the meeting, at which she was supposed
to be taking minutes, Anderson began to sob uncontrollably and
became nonfunctional.  *Id.*  On March 12, 2004, the Foundation
terminated her employment, stating that she was unable to perform
the essential functions of her job.  *Id.* at Ex. 31.  The
Foundation stated that its reasons for terminating Anderson were:
1.        Inability to focus on and effectively complete the

essential functions of your job in a timely manner.

2.        Difficulty keeping up with the pace of this office.

3.        Lack of initiative in organizing office records, filing systems.

4.        Lack of attention to detail in important Fair projects.

5.        Failure to develop our Office Operations Manual for the past three years.

6.        Poor memory of vital events and projects and their due dates.

7.        Inability to adequately manage assistant personnel in past years.

8.        Frequent difficult multi tasking and setting task priorities.

9.        Chronic lack of appropriate judgment regarding departmental confidentiality.

10.       Failure to follow direct requests from your supervisor.

11.       Inappropriate conversations and emails to staff in which you openly criticize your supervisor.

12.       Inappropriate emails and emailing, hampering work effectiveness in the times you are here.

*Id.* at Ex. 31.

The Foundation maintains that, although Anderson was occasionally required to reschedule appointments around business events, she was never denied an opportunity to take FMLA leave. *Id.* at Ex. 3, ¶ 24.  In her deposition, Anderson admitted that she was never denied leave outright, but was sometimes required

to reschedule appointments.  *Id.* at Ex. 4, pp. 268-69.  The Foundation further presented evidence that Anderson did not always follow the approval process to the letter, but was still allowed leave even if she applied after the fact.  *Id.* at Ex. 3, ¶ 23.

On March 14, 2005, Anderson filed suit in this Court. Anderson asserted an interference claim under the FMLA, as well as state law claims for wrongful termination in violation of Louisiana public policy and intentional infliction of emotional distress in violation of article 2315 of the Louisiana Civil Code.  Anderson sought an award of medical expenses, loss of earnings, pain and suffering, punitive damages, and attorney's fees.  On June 2, 2005, Anderson filed a supplemental complaint, adding a retaliatory discharge claim under the FMLA.  On September 22, 2005, this Court granted the Foundation's motion to dismiss the state wrongful termination claim.  Accordingly, the remaining claims are for interference under FMLA, retaliation under FMLA, and intentional infliction of emotional distress under Louisiana state law.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled

7

to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c));

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  A court

must be satisfied that no reasonable trier of fact could find for

the nonmoving party.  *Lavespere v. Niagara Mach. & Tool Works,*

*Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).  The moving party bears

the burden of establishing that there are no genuine issues of

material fact.

If the dispositive issue is one on which the nonmoving party

will bear the burden of proof at trial, the moving party may

satisfy its burden by pointing out that the evidence in the

record contains insufficient proof concerning an essential

element of the nonmoving party's claim.  *See Celotex*, 477 U.S. at

325; *see also Lavespere*, 910 F.2d at 178.  The burden then shifts

to the nonmoving party, who must, by submitting or referring to

evidence, set out specific facts showing that a genuine issue

exists.  *See Celotex*, 477 U.S. at 324.  The nonmovant may not

rest upon the pleadings, but must identify specific facts that

establish that a genuine issue exists for trial.  *See Id.* at 325;

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

The Fifth Circuit has held that courts "resolve factual

controversies in favor of the nonmoving party, but only when

there is an actual controversy, that is, when both parties have

submitted evidence of contradictory facts." *Little*, 37 F.3d at

8

1075.

## III.  DISCUSSION

### A.  The FMLA

The FMLA requires covered employers to provide eligible employees with up to twelve weeks of leave during any twelve-month period, if the employee has a serious health condition that makes her unable to perform the functions of her position.  29 U.S.C. § 2612(a)(1)(D).  Leave may be taken intermittently if medically necessary.  *Id.*  As with all leave under FMLA, the employee "must make a reasonable effort to schedule the treatment so as not to disrupt unduly the operations of the employer."  29 U.S.C. § 2614(e)(2)(A).  An employee taking intermittent leave is required to notify the employer as soon as practicable of her intent to take leave on particular dates if those dates were initially unknown.  29 C.F.R. § 825.302(a).

Under the FMLA, a "serious health condition" includes an illness, injury, impairment or physical condition that involves inpatient care or continuing treatment by a health care provider. *See Mauder v. Metropolitan Transit Authority of Harris Cty., Tex.*, 446 F.3d 574, 579 (5th Cir. 2006) (citing 29 C.F.R. § 825.114(a)).  When an employee returns from leave, the employee is entitled to be restored to her original position or to an

equivalent position.  29 U.S.C. § 2614(a)(1)(A).  The FMLA further provides that "[n]othing in this section shall be construed to entitle any restored employee to . . . any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken leave." *Nero v. Industrial Molding Corp.*, 167 F.3d 921, 925-26 (5th Cir. 1999) (quoting 29 U.S.C. § 2614(a)(3)).

The FMLA contains two distinct provisions.  The first is a set of substantive rights or entitlements. *Nero*, 167 F.3d at 927.  The employer may not "interfere with, restrain, or deny the exercise of, or the attempt to exercise," any right under FMLA. 29 U.S.C. § 2615(a)(1).  In the context of an interference claim, once the employee has met the statutory requirements, she is entitled to leave under the FMLA.  As such, the employer's intent is irrelevant. *Mauder*, 446 F.3d at 580.  The second provision under the FMLA protects employees from retaliation or discrimination for exercising their rights under the FMLA. *Id.* (citation omitted); 29 U.S.C. § 2615(a)(2).

## B.  Interference Claim

Anderson first alleges that the Foundation deprived her of her right to take leave.  Specifically, Anderson alleges that she

was not allowed to work less than a full schedule or take intermittent leave as she requested.  Anderson also argues that the approval process required her to find a co-worker to act as a replacement for her while she was on leave, which amounted to interference with, or restraint of, her right to FMLA leave.

In order to state a prima facie case of interference under the FMLA, an employee must demonstrate only that she was entitled to a benefit that was denied.  *See Strickland v. Water Works & Sewer Board*, 239 F.3d 1199, 1206-07 (11th Cir. 2001) (citing *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1353-54 (11th Cir. 2000); *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999)); see also 29 U.S.C. § 2615(a)(1). Other federal courts have required a plaintiff in FMLA interference cases to establish five elements: (1) that she is an eligible employee; (2) that the defendant is an employer under the FMLA; (3) that she was entitled to leave under FMLA; (4) that she gave notice to the defendant of her intention to take leave; and (5) that she was denied benefits to which she was entitled under FMLA.  *See, e.g., Garraway v. Solomon R. Guggenheim Foundation*, 415 F. Supp. 2d 377, 382 (S.D.N.Y. 2006) (citation omitted); *Price v. Multnomah Cty.*, 132 F. Supp. 2d 1290, 1297 (D. Ore. 2001) (citation omitted); *Brown v. Dollar General Stores, Ltd.*, 2006 WL 448880, *3 (W.D. Ky. 2006).  As the first four

11

elements of this test are not at issue, the question under either test is whether the Foundation denied benefits to which Anderson was entitled under FMLA.  Such a denial includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave."  29 C.F.R. § 825.220.  Further, an employer cannot use the taking of FMLA leave as a negative factor in hiring or disciplinary decisions.  *Id.* at § 825.220(c).  The Foundation argues both that Anderson was not entitled to intermittent leave and that, regardless, she was afforded the opportunity to take intermittent leave.

As to Anderson's entitlement to leave, the Foundation argues that she was unable to perform the essential functions of her job, and was therefore not entitled to intermittent leave under the FMLA.  The Foundation relies on *Hatchett v. Philander Smith College*, 251 F.3d 670, 677 (8th Cir. 2001).  *Hatchett* involved a plaintiff who suffered neurological damage after being struck by falling debris.  *Id.* at 672.  The plaintiff admitted that, since the accident, she had been unable to perform the tasks associated with her job, but she sought intermittent leave anyway.  *Id.* at 672-73.  Her employer denied her request for intermittent leave. *Id.*  In reviewing the district court's grant of summary judgment for the employer, the Eighth Circuit held that an employee who cannot perform the essential functions of her job while not on

12

leave was not entitled to intermittent leave.  *Id.* at 677.

This case is distinguishable from the *Hatchett* case because the Foundation has not shown that Anderson was unable to perform the essential functions of her position before requesting intermittent FMLA leave.  In *Hatchett*, there was no question that the plaintiff was unable to do her job even before she requested leave.  In this case, the Foundation has not shown that Anderson was unable to perform the essential functions of her position on January 20, 2004, when she first mentioned a desire to take FMLA leave.  The Foundation has argued that the event that precipitated Anderson's termination took place on March 10, 2004. That the Foundation employed her throughout January and February, after her initial FMLA leave request, suggests that the Foundation determined that she was (or could be) still capable of performing the essential functions of her job.  Furthermore, the Foundation actually *granted* Anderson's request for intermittent FMLA leave.  This undermines the Foundation's contention that, at the time, Anderson was ineligible for leave because she was incapable of performing her job.  Because the Foundation has not demonstrated that Anderson was never entitled to FMLA leave as a matter of law, the *Hatchett* case does not foreclose recovery for interference or restraint during the period in which Anderson was

13

entitled to leave.[1]  Accordingly, the Foundation is not entitled to summary judgment on this ground.

The Foundation also argues that, even assuming that Anderson was entitled to intermittent leave, she was actually permitted to take intermittent leave.  The record evidence confirms that Anderson was permitted to take intermittent leave under the FMLA. (R. Doc. 30-6 at Ex. 21 & 26).  Anderson has pointed to no specific instance in which she was denied leave.  It is true that Anderson was sometimes required to reschedule leave in order to attend Foundation meetings.  (*See* R. Doc. 30-5 at Ex. 3, ¶ 24) ("occasionally, [Anderson] was required to reschedule doctor's appointments when the appointment interfered with important Foundation meetings for which her attendance was required.").  Anderson does not contest that she was able to reschedule leave when the leave she requested conflicted with meetings.  *Id.* at Ex. 4, pp. 268-69 ("Q: When she said you could not make that doctor's appointment --.  A: Like there was a meeting that day. Q: She did allow you to reschedule, though, correct?  A: Yes."). Working with an employer on the rescheduling of leave is

---

[1] The Court does find, *infra*, that Anderson was unable to perform the essential functions of her position after March 12, 2004.  Accordingly, insofar as her interference claim seeks to recover for a denial of leave after that date, the Court notes that she was not entitled to that leave.

14

consistent with the employee's responsibility to make reasonable efforts to prevent disruption of the employer's business. 29 U.S.C. § 2614(e)(2)(A); 29 C.F.R. § 825.302(e) (employee has responsibility to "consult with the employer and make a reasonable effort to schedule the leave so as not to disrupt unduly the employer's operations"). This ordinarily includes consultation with the employer before scheduling appointments. *Id.* Should the employee fail to consult with the employer beforehand, the employer may require the employee to attempt to make arrangements that do not disrupt business operations, subject to the approval of the employee's health care provider. *Id.* The evidence before the Court shows that the Foundation did not deny Anderson the right to take leave; it merely required her to make arrangements in order to avoid unduly disrupting Foundation business. Anderson has submitted no evidence that she was unable to reschedule the appointments as requested, that the rescheduling was an unreasonable burden, or that her doctors objected to the rescheduled times as detrimental to her required course of treatment.

Anderson has submitted an affidavit in which she states that she was required to obtain approval by her supervisors before she could take leave, and that she was required to find a co-worker to cover for her "whenever" she asked to take leave. (R. Doc.

15

34-2 at Ex. 1, ¶¶ 5-7).  Her contention is that these
"requirements" constituted interference with or restraint of her
right to leave under FMLA.

The Foundation's FMLA policy required employees to complete
its one-page absentee form in connection with taking leave.  An
employer may impose "usual and customary notice and procedural
requirements for requesting leave."  29 C.F.R. § 825.302(d).  An
employer may not, however, disallow or delay leave if the
employee does not comply with the employer's procedures, provided
that the employee gives timely notice of her intent to take
leave.  *Id.*  As discussed above, there is no evidence that would
suggest that the approval process or the substitute provision
interfered with Anderson's opportunity to take leave.  From the
evidence, it is clear that Anderson received the leave as she
requested, except that she was occasionally required to
reschedule appointments as discussed above.  There is no evidence
that the substitute provision was ever an impediment to her
ability to take leave or that it was ever even treated as a
prerequisite.  Neither the leave form nor the Foundation's policy
expressly states that unless an employee finds a substitute to
cover for her, she will not be granted leave.  There is also
evidence that Anderson was granted and/or took leave, even when
she did not submit requests, obtain approval or notify her

16

supervisor beforehand.  (R. Doc. 30-6 at Ex. 26).  Specifically, on February 27, 2004, Anderson made no request for leave and yet was absent from work.  *Id.*  Thereafter, on March 2, she filled out a request for FMLA leave for February 27.  *Id.* at Ex. 30.  In addition, many of her request forms are not dated and were not approved by Anderson's supervisor.  *Id.*  Yet Anderson took leave on the dates proposed.  (*Compare* R. Doc. 30-6 at Ex. 21 with R. Doc. 30-7 at Ex. 30).  That Anderson was allowed to take leave even when she did not fill out absentee forms and/or did not get them approved indicates that the approval process was not burdensome to her exercise of FMLA rights.  Further, the Court has found no legal authority to the effect that asking an employee to find another employee to cover for her constitutes *per se* interference with intermittent leave rights under the FMLA.  Nevertheless, insistence on such a requirement to the detriment of an employee's ability to take leave would be an interference.  But that was not the case here.  In practice, Anderson filled out 18 absentee request forms for dates after her submission of a medical certification.  On all but one of those forms, Anderson listed her supervisor, Nancy Ochsenschlager, as her fill-in.  (R. Doc. 30-7 at Ex. 30).  In addition, only three of these forms show approvals.  *Id.*  Nevertheless, Anderson was permitted to take leave on the dates listed, except those dates

17

that were after her termination. *Id.; see also id.* at Ex. 21.
Absent some showing that the request that Anderson find a co-
worker to fill in for her was at all an impediment to her ability
to obtain leave under FMLA, the Court cannot conclude that the
defendant violated the Act on this ground.

For the foregoing reasons, the Court has determined that
there is no genuine issue of material fact whether the Foundation
denied or otherwise interfered with Anderson's right to leave
under FMLA.  Accordingly, summary judgment is appropriate on this
claim.

**B.  Retaliation**

Anderson's second claim is for retaliation under the FMLA.
29 U.S.C. § 2615(a)(2).  When, as here, there is no direct
evidence of retaliation, the plaintiff must first establish a
prima facie case of retaliation. *Chaffin v. John H. Carter Co.,
Inc.*, 179 F.3d 316, 319-20 (5th Cir. 1999).  Thus, she must
demonstrate that (1) she engaged in a protected activity, (2) the
employer discharged her, and (3) there is a causal connection
between the protected activity and the discharge. *Id.*  Once this
initial burden is met, the employer must advance a legitimate,
non-discriminatory reason for the plaintiff's discharge. *Id.*  If
the employer does so, the plaintiff may withstand summary

18

judgment only by producing "substantial probative evidence that the proffered reason was not the true reason for the employment decision . . . .". *Id.* at 320.

The Court finds that the first two prongs of the prima facie test are met.  It is clear that Anderson took FMLA leave and that she was discharged.  The third prong requires that there be a causal connection between the invocation of a protected right and the adverse employment action.  Under this third prong, a plaintiff must demonstrate either that the defendant treated her less favorably than an employee who did not request FMLA leave, or that the defendant fired her because she took FMLA leave. *Hunt v. Rapides Healthcare Sys., L.L.C.*, 277 F.3d 757, 768 (5th Cir. 2002).  Anderson relies on the close timing between the time she began to take leave and her termination as evidence that defendant fired her because she took leave.  Assuming that such evidence would satisfy the causation element of plaintiff's *prima facie* case, the Court examines the Foundation's evidence that it terminated plaintiff for legitimate, non-discriminatory reasons. The Foundation maintains that it terminated Anderson because she was not performing her job.

Under the FMLA, an employee must be able to perform the essential functions of her position upon returning from FMLA leave.  This follows because FMLA does not entitle an employee to

"any right, benefit, or position of employment other than any
right, benefit, or position to which the employee would have been
entitled had the employee not taken . . . leave."  29 U.S.C. §
2614(a)(3)(B); *see also* 29 C.F.R. § 825.216(a) ("An employee has
no greater right to reinstatement or to other benefits and
conditions of employment than if the employee had been
continuously employed during the FMLA leave period.  An employer
must be able to show that an employee would not otherwise have
been employed at the time reinstatement is requested in order to
deny restoration to employment.").  Thus, if an employer would be
justified in terminating an employee for reasons unrelated to
taking leave, the FMLA does not shield the employee from
termination while on leave and the employee has no right of
restoration under the FMLA.  *See Throneberry v. McGehee Desha
Cty. Hosp.*, 403 F.3d 972, 978 (8th Cir. 2005).

     The evidence in the record supports the Foundation's
assertion that it terminated plaintiff for failing to perform her
job satisfactorily.  The Foundation specified its reasons for
terminating Anderson in its March 12, 2004 letter.  (R. Doc. 30-7
at Ex. 31).  Further, the evidence shows that Anderson failed to
remind the staff about an upcoming meeting and failed to prepare
an agenda. (R. Doc. 30-5 at Ex. 2 ¶ 16).  She failed to make
revisions to job descriptions by the February 6, 2004 deadlines.

20

*Id.* at Ex. 2, ¶ 22.  She admitted to her supervisor that she was having trouble getting her work done.  *Id.* at Ex. 2, ¶ 23.  She prepared a meeting agenda with errors in it.  *Id.* at Ex. 2, ¶ 29.  Moreover, she failed to prepare for the March 10, 2004 meeting, and then became so emotional during the meeting that she could not function.  *Id.* at Ex. 2, ¶¶ 31-33.  She admits that she was falling behind at work, that she lacked focus, and that she was misplacing things.  (R. Doc. 30-5 at Ex. 4, pp. 173-74, 180).  The evidence supporting each of these contentions is not in dispute.[2]  When there is overwhelming and uncontradicted evidence that an adverse employment action was taken for other reasons, mere temporal proximity between the adverse action and an employee's protected activity is insufficient to raise an issue of fact as to whether an employee was fired for taking leave.  *See Swanson v. General Services Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) (holding, in a race discrimination case, that "close timing" is an element of the plaintiff's *prima facie* case, but insufficient on its own to rebut a legitimate, non-discriminatory

---

[2] In an affidavit, Anderson makes only the blanket assertion that "Matters set forth in the *Declaration of Nancy Ochsenschlager* are factually inaccurate."  (R. Doc. 34-2 at Ex. 1, ¶ 3).  Such a blanket denial cannot suffice to create a genuine issue of material fact when there are plainly matters set forth in the declaration that the record establishes are not factually inaccurate.

reason that explains the action and its timing); *Alfonso-Ferro v. Stolthaven New Orleans, L.L.C.*, 2005 WL 1309133 (E.D. La. 2005).

Anderson argues that her performance evaluation received on January 15, 2004 was positive, and that it was only after her invocation of FMLA rights that her performance came into question.  (R. Doc. 34-2 at Ex. 2).  The positive evaluation Anderson referred to was for work completed during the 2002-03 festival year, not for her current performance.  At the January 15 meeting, Anderson's supervisor also discussed her current performance problems, including her inability to focus and to complete assigned tasks, as well as her negative attitude toward her supervisor.  This occurred before she brought up taking FMLA leave.  Further, Anderson does not dispute that her job performance continued to deteriorate between January 15, 2004 and the date of her termination.  Anderson simply has not created a genuine issue of material fact to dispute the legitimate, non-discriminatory reasons the Foundation advances for her termination.

In order to avoid summary judgment, the burden is on Anderson to bring admissible evidence to discredit the Foundation's stated reason for her termination.  Although Anderson conclusorily denies some of the performance-related charges against her, this is insufficient to defeat summary

22

judgment.  Anderson submits no evidence to rebut the Foundation's performance-related charges.  She offers only her own, conclusory, self-assessment, which the Fifth Circuit has held is insufficient to defeat summary judgment in the employment law context.  *See Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996) (holding that "unsubstantiated assertions are not competent summary judgment evidence) (citations omitted); *see also Molnar v. Ebasco Constructors, Inc*., 986 F.2d 115, 119 (5th Cir. 1993) (holding that an employee's unsubstantiated testimony that he was better qualified than employees that were not subject to adverse employment actions was insufficient to defeat summary judgment). Therefore, the Court finds that Anderson has not advanced sufficient evidence to rebut the Foundation's legitimate, non-discriminatory reason for terminating her.  Accordingly, summary judgment is appropriate on this claim.

**C.    Intentional Infliction of Emotional Distress**

The Foundation also argues that summary judgment is appropriate on Anderson's state law claim for intentional infliction of emotional distress.  To prevail on a claim for intentional infliction of emotional distress under Louisiana law, a plaintiff must establish: (i) that the defendant engaged in

23

extreme and outrageous conduct; (ii) that the plaintiff suffered severe emotional distress as a result; and (iii) that the defendant intended to inflict severe emotional distress or knew that severe emotional distress would be substantially certain to result from his conduct. *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). Such conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017, 1022 (La. 2000).

The evidence establishes as a matter of law that the Foundation's behavior was not so extreme in degree as to go beyond all possible bounds of decency. Anderson testifies that, until the last two months of her employment, her relationship with her supervisor Nancy Ochsenschlager was positive. (R. Doc. 30-5 at Ex. 4, pp. 65-66). In fact, Ochsenschlager brought Anderson to her own medical professional in December 2003. *Id.* at Ex. 4, p. 90. Also, Anderson's deposition testimony establishes that she was not refused intermittent leave, although at times she was required to reschedule doctor's appointments around meetings. *Id.* at Ex. 4, pp. 268-69. Even if the Foundation could be found to have violated Anderson's rights under the FMLA, Anderson has presented no evidence that indicates

24

that the Foundation's behavior was "utterly intolerable."  *See White*, 585 So.2d at 1209-10.  The Louisiana Supreme Court held in *White* that a profanity-laced tirade by a supervisor did not constitute intentional infliction of emotional distress.  *Id.* The Fifth Circuit has held that even the creation of "unpleasant and onerous work conditions designed to force an employee to quit" does not constitute intentional infliction of emotional distress under Louisiana law.  Deus v. Allstate Ins. Co., 15 F.3d 506, 514 (5th Cir. 1994).  The Foundation's behavior does not even rise to the level of a profanity-laced tirade, or the creation of unpleasant work conditions designed to force Anderson to quit.  Accordingly, the Foundation's actions do not constitute an intentional infliction of emotional distress, and the Foundation is entitled to summary judgment on this claim.

## III. CONCLUSION

For the reasons stated above, the Court GRANTS the Foundation's motion for summary judgment.


New Orleans, Louisiana, this 22nd day of November, 2006.


_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

25